## COXE v. BALLARD.
### No. 4841.

Court of Appeals of District of Columbia.

Argued Feb. 4, 1930.

Decided May 5, 1930.

Oscar W. Underwood, Jr., and H. C. Kilpatrick, both of Washington, D. C., for appellant.

H. H. Clarke and D. Edward Clarke, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District upon the pleadings and voluminous evidence dismissing a bill in equity brought by appellant as trustee in bankruptcy for Preston Motors Corporation. The bill attacks appellee's contracts with the corporation covering the sale of capital stock on the grounds that appellee's relation to the corporation was fiduciary in character, and that he obtained the contracts through fraud upon the corporation, its stockholders and creditors.

The bill prays that appellee be declared a trustee as to all moneys received by him under his contracts with the company, and that a lien be established upon the real estate purchased with such money. It also prays for an accounting and discovery, and waives answer under oath. Answer was filed, including answers to the interrogatories. Depositions were taken and witnesses, including appellee, testified in open court.

The Preston Motors Corporation was organized as a Delaware corporation March 8, 1919, with an authorized capitalization of $1,000,000, divided into one hundred thousand shares of $10 par, one-third common

stock and two-thirds as cumulative preferred nonvoting 10 per cent. stock. The purpose of the corporation was to manufacture at Birmingham, Ala., and sell automobiles. There were seven incorporators. Mr. E. S. Hugger subscribed to twenty shares. He was a substantial business man of Montgomery, Ala., a member of the firm of Hugger Bros., construction engineers and contractors, with a financial rating in excess of $1,000,000. Mr. Joseph Gies, who subscribed to twenty shares, was a lumber man of Montgomery with a financial rating of approximately $500,000. Mr. T. I. Moore, who subscribed to twenty shares, was cashier of a bank at Marion, Ala., and a man of standing in his community. Mr. O. B. Harris, who subscribed to ten shares, was engaged in the real estate business. Mr. Preston Orr, who subscribed to twenty shares, was without financial means, as was appellee, who subscribed to ten shares. The record does not disclose the financial standing of Mr. G. E. Lindsey, who subscribed to twenty shares. The contention of appellant that "there is no evidence that any of them (the incorporators) were men of means" is not sustained by the record. It may be here stated that there is nothing in the record impugning the character and good faith of these original incorporators.

The first meeting of the incorporators was held March 8, 1919, when all of the seven incorporators, except appellee and Lindsey, were elected directors. At the first meeting of the directors, March 25, 1919, Mr. Hugger was elected president and Preston Orr, secretary and treasurer. An executive committee, consisting of Hugger, Orr, and Moore, was appointed, with authority to exercise all the powers of the board while the board was not in session. Orr originally intended to act as fiscal agent in handling the sale of stock, but changed his mind, and when Harris refused to act in that capacity appellee was approached. At the directors' meeting on March 25, 1919, a contract with him for the sale of stock was approved. This contract provided for the sale of capital stock, reserving to the corporation the right to set aside fifteen thousand shares for other purposes; authorized the employment of stock salesmen; required appellee to pay all expenses incurred by him in the employment and financing of such salesmen, they to make returns to the company direct; required appellee to secure distributing agents and local agents to sell the entire output of the company under a contract similar in form and general terms to those in use by other automobile manufacturers; provided for the payment to the appellee in consideration of the obligations assumed by him, including training and supervision of the sales force so employed, of a commission of 10 per cent. on all stock sold under the contract and limited the company's obligation to any stock salesman employed thereunder to not more than 25 per cent. on sales of stock by him. This contract was spread upon the minutes of the corporation.

It is the contention of appellant that prior to the execution of the above contract appellee orally agreed with the directors that he would pay them any commissions on sales of stock made by them. The fact is, as disclosed by the testimony of Mr. Hugger, Mr. Harris, and appellee, that subsequent to the execution of the contract the question arose as to whether, in the event officers of the company should sell stock, it would be permissible for appellee to pay them commissions similar to those paid salesmen under the contract. It was agreed that such payment would be proper and might be made. All the officers and directors were present when this took place.

The original incorporators were without experience as automobile manufacturers. For this reason R. A. Skinner, an automobile engineer of experience, was employed at a salary of $5,000 per year, with the privilege of selling the corporation's stock at a commission of 25 per cent. Thereupon, Mr. Hugger resigned as president and as a member of the executive committee, and Skinner succeeded him. He entered upon his duties in July, 1919. In October of 1919, James T. Driver, was elected a director. Early in November, following, Skinner became dissatisfied with the amount he was receiving and proposed to appellee that, inasmuch as he (Skinner) Orr and Driver were doing as much through the management of the company to promote the sale of its stock as appellee in its actual sale, they should receive a percentage of his commissions in so far as those commissions exceeded the amounts received by these parties as salaries, threatening to resign if such division were not made. Appellee testified that, in view of Skinner's threat and the fact that Skinner was the only practical automobile man with the company, appellee acceded to this demand, but that the next morning, after consulting with the company's attorney, Mr. Nesmith, he notified the parties named that he would not go through with the arrangement. This state-

ment is corroborated by appellant's witnesses Orr and Driver. Skinner, a witness for appellant, admitted that he himself suggested the arrangement, and that "it did not contemplate and did not result in the taking of any moneys from the Preston Motors Corporation that Ballard was not entitled to under that (his) contract." It is the contention of appellant that, "although defendant told Orr the next day that he would not carry out this agreement, he did thereafter pay several thousand dollars to Orr and to Skinner." This contention is not sustained by the record. The evidence tends to show that the amounts paid Orr and Skinner were commissions on the sales of stock made by them.

In the fall of 1919, the Legislature of the state of Alabama enacted a law commonly known as the Blue Sky Law (Gen. Acts Ala. 1919, p. 946) relating to the sale of corporate stock and securities within the state. The act was to become effective November 28th of that year. The Preston Motors Corporation announced by advertisement that it did not intend to qualify under the act. Special effort was made to sell stock in the state before the act became effective.

At a stockholders' meeting February 11, 1920, the capital stock of the corporation was increased from $1,000,000 to $10,000,000. At the annual meeting of the stockholders March 13, 1920, appellee was elected a director for a term of one year. It is the contention of appellant that appellee's second contract, dated May 25, 1920, to act as fiscal agent in the sale of the additional stock of the corporation, was entered into while he was a director. This contract was less favorable to him than the prior one. The evidence is convincing that his election as a director was without his knowledge, and that he immediately resigned and never acted as a director.

Subsequent to the increase in the capital stock of the corporation and in the fall of 1920, the corporation made application to the State Securities Commission of Alabama to qualify under its Blue Sky Law. Thereupon the commission caused an investigation to be made by Frank E. Spain, an attorney of Birmingham, and John H. Adams, a mechanical engineer of long and diversified experience. Each made separate and independent investigations of the affairs of the corporation. Mr. Spain covered its executive personnel, its financial structure, the book value of its assets, and the reasonableness of the commissions to be paid for the selling of its stock. In his report to the commission, which was introduced in evidence, he found that the contracts for commissions were reasonable in the light of the conditions of the money market at that time, and that in his opinion it could not have been accomplished for a smaller commission. Concerning the good faith of those in charge of the corporation, Mr. Spain said: "I have been impressed from the beginning with the honesty and sincerity of these men in their determination to build a successful enterprise upon a permanent foundation. I have been impressed further with the fact that the Preston Motors Corporation is not a promotion scheme for the sale of stock."

The report of Mr. Adams, who valued the physical properties, is also in the record. He found their value as of September 4, 1920, to be $656,500. The evidence indicates that as a result of these favorable reports to the State Securities Commission a permit was issued to the corporation.

On May 12, 1921, after the completion of the audit of the company's books and the preparation of a statement of his account with the company, appellee terminated his contract and turned over to the company a force of twenty-six salesmen. In the bill it is alleged that he received under his contracts with the corporation $337,297.53 as commissions. The evidence indicates that his net commissions after paying all expenses approximated $26,000.

It is further contended that appellee "was a promotor of Preston Motors Corporation throughout the time that he was engaged in the sale of its stock." The evidence is to the contrary. There is no evidence that he had anything to do with either the organization of the corporation or its control thereafter, except that he acted as fiscal agent in the sale of its stock. Indeed, in appellant's brief there is a statement that Orr "organized Preston Motors Corporation and was the moving spirit in the management of its affairs."

We have read the record in this case with care and find ample ground to sustain the decree of the court below. Such a decree, involving as it does a consideration of the evidence taken in open court and a determination of questions of fact, is entitled to great respect. United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499; McLarren v. McLarren, 45 App. D. C. 237.

■ Upon the argument of the cause in the court below, counsel for plaintiff, appellant here, requested the court to hear and take into consideration the Blue Sky Law of Alabama. The refusal of the court to grant this request is here assigned as error. In the circumstances of the case we fail to perceive wherein appellant was prejudiced by such refusal.

The decree is affirmed, with costs.

Affirmed.